UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
====================================================
JWJ INDUSTRIES, INC. and
JEFFREY HOLBROOK,
                              Plaintiffs,

v.                                              5:09-CV-0740 (NPM / DEP)

OSWEGO COUNTY,
                              Defendants.
====================================================

APPEARANCES                              OF COUNSEL

BANSBACH ZOGHLIN P.C.            MINDY L. ZOGHLIN, ESQ.
Attorney for Plaintiffs
31 Erie Canal Drive, Suite A
Rochester, N.Y. 14626

GERMANO & CAHILL, P.C.            MICHAEL J. CAHILL, ESQ.
Attorney for Defendant
4250 Veterans Memorial Highway, Suite 275
Holbrook, N.Y. 11741

NEAL P. McCURN, Senior U.S. District Court Judge

MEMORANDUM-DECISION AND ORDER

        The matter before the court is a civil rights action, filed pursuant to 28

U.S.C. §§ 1331 and 1343 and 42 U.S.C. §1983, in which plaintiffs JWJ Industries,

Inc. and Jeffrey Holbrook ("Holbrook"), an officer and shareholder of JWJ

Industries, Inc. (collectively, "JWJ") complain, inter alia, of an unconstitutional

taking of their property by the defendant Oswego County ("County") without just

compensation.  The alleged taking occurred when the County enacted the Flow

Control  provisions ("Flow Control Law") of the Oswego County Recycling and

Solid Waste Local Law ("solid waste law").  Currently before the court are the parties' cross motions for judgment on the pleadings.  For the reasons set forth below, plaintiffs' motion is granted, and defendants' motion is denied as moot.

## I.      Facts and Procedural History

The court assumes familiarity with the facts and procedural history of this case as set forth in the court's previous decisions. See, e.g., JWJ Industries, Inc. v. Oswego County, 2009 WL 2163097 (N.D.N.Y. 2009).  Plaintiffs' amended complaint (Doc. No. 22) sets forth five causes of action: that the Flow Control Law (1) results in an unconstitutional taking without just compensation; (2) violated plaintiffs' due process rights; (3) violated plaintiffs' equal protection rights; (4) entitles plaintiff to Section 1983 relief; and (5) is unconstitutionally vague and overbroad.  Currently before the court is plaintiff's motion for judgment in their favor on the fifth cause of action, requesting that the court set aside the Flow Control Law as unconstitutionally vague and overbroad.  Defendants have filed a cross motion for judgment on the pleadings.

## II.     Discussion

The seminal case law on the constitutionality of flow control management is the case of United Haulers Association v. Oneida-Herkimer Solid Waste Management Authority, 550 U.S. 330, 127 S.Ct. 1786 (2007).   Comprehensively

summarized in a recent case, the Supreme Court in <u>United Haulers</u>

> upheld a flow control ordinance requiring trash haulers to deliver
> solid waste to a processing plant owned and operated by a public
> authority in New York State. [The Court] found compelling reasons
> for treating the ordinance differently from laws favoring particular
> private businesses over their competitors.  State and local
> governments that provide public goods and services on their own,
> unlike private businesses, are vested with the responsibility of
> protecting the health, safety, and welfare of their citizens ... and laws
> favoring such States and their subdivisions may be directed toward
> any number of legitimate goals unrelated to protectionism. That was
> true in <u>United Haulers</u>, where the ordinance addressed waste disposal,
> both typically and traditionally a local government function.  And if
> more had been needed to show that New York's object was
> consequently different from forbidden protectionism, [the Court]
> pointed out that the most palpable harm imposed by the
> ordinances-more expensive trash removal-was likely to fall upon the
> very people who voted for the laws rather than out-of-state interests.
> Being concerned that a contrary approach ... would lead to
> unprecedented and unbounded interference by the courts with state
> and local government,[the Court] held that the ordinance did not
> discriminate against interstate commerce for purposes of the dormant
> Commerce Clause.

<u>Department of Revenue of Kentucky v. Davis</u>, 553 U.S. 328, 340 (2008) (internal
quotations and citations omitted).

In finding that there was no dormant Commerce Clause violation in <u>United</u>

<u>Haulers</u>, the Court noted it "distinguished our decision in <u>C & A Carbone, Inc. v.</u>

<u>Clarkstown</u>, 511 U.S. 383, 114 S.Ct. 1677 (1994), which struck down a very

similar ordinance on Commerce Clause grounds. The <u>Carbone</u> ordinance,

however, benefited a private processing facility,[1] and [the Court] found this difference constitutionally significant ... Although the <u>Carbone</u> dissent argued that the private facility was essentially a municipal facility, <u>United Haulers</u> relied on the apparent view of the <u>Carbone</u> majority that the facility was properly characterized as private." <u>Dept. of Revenue of Ky v. Davis</u>, 553 U.S. at 340 Fn. 4.

In the case before us, we have another scenario: implementation of a county flow control ordinance and county owned transfer stations which were temporally preceded in the county by the JWJ Transfer Station, a privately owned, state licensed waste transfer station. The JWJ facility is not addressed, specifically or by inference, in Oswego County's Flow Control Law. Pursuant to case law as set forth in <u>United Haulers</u>, the County was unquestionably within its right to

---

[1]      In <u>Carbone</u>, the town entered into a consent decree with the NYS Department of Environmental Conservation to close its landfill and build a new solid waste transfer station on the same site. The station would receive bulk solid waste and separate recyclable from nonrecyclable items. Recyclable waste would be baled for shipment to a recycling facility; nonrecyclable waste, to a suitable landfill or incinerator. The cost of building the transfer station was estimated at $1.4 million. A local private contractor agreed to construct the facility and operate it for five years, after which the town would buy it for $1. During those five years, the town guaranteed a minimum waste flow of 120,000 tons per year, for which the contractor could charge the hauler a so-called tipping fee of $81 per ton. If the station received less than 120,000 tons in a year, the town promised to make up the tipping fee deficit. The solution the town adopted for financing the project was the flow control ordinance in question before the Court. The ordinance required all nonhazardous solid waste within the town to be deposited at the transfer station, despite the reality that the tipping fee of $81 per ton exceeded the cost if unsorted private waste on the private market. <u>Carbone</u>, 511 U.S. at 387.   The Court held this agreement between the town and the private contractor to be a violation of the dormant Commerce Clause.

implement a flow control ordinance directly affecting the operation of JWJ's transfer station, but the question posed to this court is whether Oswego County's Flow Control Law, as written, violates JWJ's constitutional rights. The narrow question for the court's consideration is whether the Flow Control Law is unconstitutionally vague and overbroad, on its face and as it is applied to JWJ.

A.      Legal Standard for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." Id. (internal citations omitted).

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)

5

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. (2007)). When

deciding a motion to dismiss, the court must accept as true the well pleaded

allegations of the complaint. Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807

(1994).  The allegations of the complaint should be construed favorably to the

pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1973).

      B.      Finding a Law Unconstitutional Facially and/or As Applied

      "As one of the most fundamental protections of the Due Process Clause, the

void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to

give the person of ordinary intelligence a reasonable opportunity to know what is

prohibited and to provide explicit standards for those who apply them." Thibodeau

v. Portuondo, 486 F.3d 61 (2d Cir. 2007) (internal citations and quotations

omitted).  The court in Thibodeau also set forth the two independent grounds

recognized by Supreme Court jurisprudence as a means to determine vagueness

which denies due process of law:

> First, a law violates due process if it fails to provide people of
> ordinary intelligence a reasonable opportunity to understand what
> conduct it prohibits. Animating this first vagueness ground is the
> constitutional principle that individuals should receive fair notice or
> warning when the state has prohibited specific behavior or acts ...
> Second, a law is unconstitutionally vague if it authorizes or even
> encourages arbitrary and discriminatory enforcement.  This second
> ground, which the Supreme Court recognizes as the more important
> aspect of the vagueness doctrine, mandates that laws contain minimal

> guidelines to govern law enforcement. Indeed, statutes must provide
> explicit standards for those who apply them to avoid resolution on an
> ad hoc and subjective basis, with the attendant dangers of arbitrary
> and discriminatory application.

Thibodeau v. Portuondo, 486 F.3d at 65-66 (internal citations and quotations omitted).

Stated another way, "[t]he relevant inquiry is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 186-87 (2d Cir. 2010) (internal quotations and citations omitted).  "A statute may be challenged on vagueness grounds either as applied or on its face. Both types of vagueness challenge require the inquiry described above, ... but the two differ in terms of what parties may assert and how these challenges may be brought." Thibodeau v. Portuondo, 486 F.3d at 67.

The court notes that economic regulations such as those which are the crux of this case are subject to a less strict vagueness test.  Id. at 66.  Accordingly, "[i]n reviewing a statute's language for vagueness, we are relegated to the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." VIP of Berlin, LLC, 593 F.3d at 186 (quoting Grayned v. City of Rockford, 408 U.S. 104, 110 (1972)) (internal quotations

omitted).  Further, "a statute which either forbids or requires the doing of an act in

terms so vague that men of common intelligence must necessarily guess at its

meaning and differ as to its application violates the first essential of due process of

law." Farrell v. Burke, 449 F.3d 470, 485 (2d Cir. 2006) (citing Connally v. Gen.

Constr. Co., 269 U.S. 385, 391 (1926) (citations omitted).

     C.    Vagueness Analysis

JWJ argues that the Flow Control Law section of the County's waste

management plan is unconstitutionally vague and overbroad, both as applied and

on its face.  First, JWJ argues that the Flow Control Law fails the first prong of the

two-part test set forth above because it does not give a person of ordinary

intelligence a reasonable opportunity to know what is prohibited, as it both

prohibits and requires out-of-county waste delivered to the JWJ Transfer Station to

be disposed of at a County solid waste facility.  JWJ points to Section 4.2(b) of the

solid waste law, which states in pertinent part that "No Solid Waste generated

outside of Oswego County ... shall be disposed of at a County Solid Waste

facility."  Contradicting that regulation is Section 4.8(a)(ii), which states that

"Construction & Demolition Debris may be delivered to a processing facility

approved by the Director for the recovery of Recyclable materials, provided that

the residue of material remaining after such recovery at a facility located in

8

Oswego County shall be delivered to a County Solid Waste Facility." The Flow

Control Law does not address Construction & Demolition ["C&D"] Debris

originating out of county and brought in to the JWJ Transfer Station for recycling.

In addition, despite the absence of any definition for processing facility in Section

2 of the solid waste law, the County uses that terminology in Section 4.8(a)(ii),

and JWJ submits that the County has arbitrarily deemed JWJ a processing facility

without providing any criteria for making that determination.[2]

    As a private transfer facility since it was first licensed by the New York

State Department of Environmental Conservation ["NYSDEC"], JWJ has been

allowed to bring C & D debris into Oswego County from outside counties.   JWJ

now posits that the Flow Control Law gives the JWJ Transfer Station a "trio of

impossible options." Doc. No. 42-9, p. 8.  First, it is directed that it shall not

dispose of out-of-county waste at a County solid waste facility. Next, it is directed

that it shall deliver the residue of material remaining after recovery at a facility

located in Oswego County to a County solid waste facility.  Finally, JWJ is

prevented by both the Flow Control Law at Section 4.6 <u>et al.</u> (regulating

---

[2]        The court notes that a comprehensive definition of a processing facility can be found at 6 NYCRR 360-1.2(b)(120). "Processing facility means a combination of structures, machinery or devices, other than collection and transfer vehicles, utilized to reduce or alter the volume or the chemical or physical characteristics of solid waste through processes such as, but not limited to separating, crushing, screening, baling or shredding before its delivery to any solid waste management facility." 6 NYCRR 360-1.2(b)(120) (West 2011).

unauthorized dumping) and the terms of the Transfer Station Permit issued by the NYSDEC from keeping the waste at the JWJ Transfer Station.   JWJ argues, and the court concurs, that the foregoing satisfies the first prong of the test to determine the law at issue in this case to be unconstitutional for vagueness.

The second prong of the test as set forth <u>supra</u> requires the court to determine whether a law is unconstitutionally vague by discerning if it authorizes or even encourages arbitrary and discriminatory enforcement by those who apply the law.  JWJ argues that the Flow Control Law is unconstitutionally vague, <u>inter alia</u>, because it fails to provide explicit standards as to what a processing facility is or how a private entity can become one.  JWJ considers the processing facility issue crucial because it is the only way for a private entity like the JWJ Transfer Station to accept any waste in Oswego County without violating the Flow Control Law.  In addition, the Flow Control Law fails to provide explicit standards as to how out-of-county waste from an in-county processing facility may be disposed of by a private entity like the JWJ Transfer Station.

JWJ states that prior to enactment of the County's solid waste law, JWJ asked the County to clarify the definition of a processing facility and the process for its approval under Section 4.8(a)(ii).  The Director of Solid Waste responded by letter dated November 26, 2008 that "[a] processing facility as described in

Section 4.8(a)(ii) would be a facility permitted to comply with NYCRR Part 360-16. The approval process by the Director would be through a review of the facility permit, meeting the State's requirements would suffice." However, JWJ's permit, held by plaintiff Holbrook, is for "Transfer Stations" pursuant to 6 NYCRR Part 360-11, not "Construction and Demolition Debris Processing Facilities" pursuant to 6 NYCRR Part 360-16. Accordingly, a precise reading of the Director's letter can be construed to mean that Holbrook's DEC permit does NOT constitute permission to operate the JWJ Transfer Station as a processing facility because the DEC permit was issued pursuant to part 360-11, not Part 360-16.

JWJ asserts that four months later, without defining "processing facility" or setting forth explicit standards on how to become one, the County unilaterally declared that the JWJ Transfer Station was a processing facility. By letter dated March 20, 2009, the Director approved the JWJ Transfer Station to process C&D materials for the purposes of Section 4.8(a) of the Flow Control Law, even though no application had been submitted for this approval. Doc. No 42-9, p. 13.

As outlined in a previous decision of this court (Doc. No. 21), the court held a July 10, 2009 motion hearing to allow JWJ to argue for a preliminary injunction. At that hearing, defendants stated that the residue C&D waste originating out of county and brought into JWJ's Transfer Station for recycling could be transported

11

OUT of county for disposal.  Pursuant to that hearing, the court issued the

following findings:

> In the plaintiffs' complaint at ¶ 30, plaintiffs argue that "[u]nder the
> Flow Control law, once any waste is delivered to the JWJ Transfer
> Station, all non-recyclable residue will be required to be disposed of
> at the Oswego County Solid Waste Management Facility, even if the
> waste originated outside of Oswego County." Doc. No. 1.
> Consequently, plaintiffs argued, enforcement of the Flow Control
> Law against them would effectively deprive them of all economically
> beneficial use of the DEC permit to operate the Transfer Station.
>
> However, at the July 10 hearing, counsel for the County
> unequivocally stated before the court that the County lays no claim to
> waste that is generated out of the county, stating that the residual
> waste from outside the County, i.e., the waste after recyclable
> materials have been removed, goes outside the County again for
> disposal. Upon questioning by the court, the County stated that if the
> waste is generated outside the county, the [Flow Control] Law does
> not apply to it.
>
> The court finds that clarification of this issue, the disposal of waste
> generated in the County versus waste generated outside of the
> County, prevents the need to extend the injunctive relief previously
> extended to the plaintiffs. Plaintiffs are still free to dispose of the
> waste generated out of county at a waste disposal facility other than
> the Oswego County Solid Waste Management Facility, information
> that was not known to the court at the time the TRO issued. The court
> instructs the plaintiffs to file an amended complaint based on this
> clarification by the County.

JWJ Industries, Inc. v. Oswego County, 2009 WL 2163097 at *4 (N.D.N.Y. 2009).

The court clearly stated in its written decision that the TRO was lifted based on the

County's clarification of its Flow Control Law, in that residual solid waste from

C&D debris brought into Oswego County by JWJ could be disposed of outside the county after the recycling process was completed.   Counsel for defendants now comes before the court reversing that stance, stating that residue from C&D waste must be disposed of in county facilities:  "Moreover, no action has been taken by the County to allege that plaintiffs have violated the Local law.  The Local law, as-applied to plaintiffs, does not deny them the opportunity to collect waste within or outside of the county, or to deliver waste from within or outside of the county to their transfer station." Doc. No. 48, p. 5.  Significantly, counsel goes on to say that "[t]he Law does not directly regulate the operation of plaintiffs' transfer station at all.  It does allow the transfer station to qualify for an exemption to the general obligation of haulers to deliver C&D to County facilities, *provided that the transfer station agrees to deliver the residue of that material after recovery of recyclables to County facilities.*" Id. (emphasis added).  Defendants assert that JWJ's argument that "the Local Law is unclear" is a manufactured argument.  The court disagrees, and finds defense counsel's arguments to be ingenuous and contradictory.   Defendants selectively quote from the court's July 2009 decision, and notably, did not object in 2009 nor do they argue now that the court misstated their position at the July 10, 2009 hearing.

      A well-crafted statute is meant to avoid and prevent the type of arbitrary and

confusing interpretation displayed by the County in this matter. The court finds that the Flow Control Law contains "terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application ...." Farrell v. Burke, 449 F.3d at 485. Scrutiny of the letters and directives from the County and its director of solid wastes reveals that not only does the Flow Control Law in question authorize and encourage arbitrary and discriminatory enforcement, such arbitrary enforcement is manifest here.

The court finds that the Flow Control Law as written fails to take JWJ's status or existence into account. For instance, despite a well-crafted, readily available description for a solid waste management facility set forth at 6 NYCRR 360-1.2(b)(158),[3] the County definitions include only a County Solid Waste Facility, disregarding the previous existence of the JWJ facility within its borders. Simply stated, the County appears to have crafted its recycling and waste management law without consideration of the reality that there was a licensed,

---

[3] "Solid waste management facility means any facility employed beyond the initial solid waste collection process and managing solid waste, including but not limited to: storage areas or facilities; transfer stations; rail-haul or barge-haul facilities; landfills; disposal facilities; solid waste incinerators; refuse-derived fuel processing facilities; pyrolysis facilities; C&D debris processing facilities; land application facilities; composting facilities; surface impoundments; used oil storage, reprocessing, and rerefining facilities; recyclables handling and recovery facilities; waste tire storage facilities; and regulated medical waste treatment facilities. The term includes all structures, appurtenances, and improvements on the land used for the management or disposal of solid waste." 6 NYCRR 360-1.2(b)(158).

fully operating waste disposal plant within its borders, or how the law should impact that private facility.   If the county government was provided a template for writing its waste management law, or adopted the law from another municipality, it appears that no effort was made to conform the law to include the JWJ facility.

For the reasons set forth above, the court finds that the inadequately drafted Oswego County Flow Control Law is unconstitutional for vagueness as written. The court also finds that the Flow Control Law is unconstitutional as applied to JWJ, and foreseeably to any other entity that would deem to own and operate a waste management facility in the County, however unlikely this scenario might be under the County's existing waste management penumbra.  This is necessarily a narrow finding, and currently applies only to the plaintiffs in this case.

Accordingly, it is axiomatic that the County is precluded from enforcing its current Flow Control Law against JWJ until such time as it corrects and clarifies said law, addressing the shortcomings as set forth in this order.  Plaintiff's motion for judgment on the pleadings is hereby granted, and the case is dismissed without prejudice, with leave for JWJ to reopen this case should the required corrections and clarifications to the law still not pass constitutional muster.  Defendants' motion for judgment on the pleadings is denied as moot.

## III.   Conclusion

For the reasons set forth in the body of this decision, plaintiffs' motion for judgment on the pleadings is hereby GRANTED, and the case is dismissed without prejudice.   Defendants' motion for judgment on the pleadings is hereby DENIED as moot.  The Clerk is instructed to close this case.

SO ORDERED.

June 13, 2011

_____

Neal P. McCurn
Senior  U.S. District Judge

16