UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JWJ INDUSTRIES, INC. and
JEFFREY HOLBROOK,

                                        Plaintiffs,

            v.                                          5:09-cv-740

OSWEGO COUNTY,

                                        Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

                        <u>**DECISION and ORDER**</u>

            Plaintiffs JWJ Industries, Inc. and Jeffrey Holbrook (collectively referred to as

"Plaintiffs") commenced the instant action claiming that Defendant Oswego County's (the

"County") adoption of a 2011 Local Law constituted an unconstitutional taking (First Cause of

Action), deprived them of due process of law (Second Cause of Action), violated their right to

the equal protection of the laws (Third Cause of Action), and is unconstitutionally vague

(Fourth Cause of Action).  Presently before the Court is Plaintiff's motion for summary

judgment pursuant to Fed. R. Civ. P. 56 on the Fourth Cause of Action and Defendant's

cross-motion for summary judgment on the Second Amended Complaint pursuant to Fed. R.

Civ. P. 56.[1]

_____

            [1] In its papers in opposition to Plaintiff's motion for summary judgment, Defendant asks the Court
to convert its motion to dismiss to a motion for summary judgment.  The Court grants this request.

I.      **FACTS**

The relevant facts have been set forth in the prior decisions and orders issued in this case, familiarity with which is presumed.[2]  For purposes of the pending motions, the Court will provide a brief synopsis of the factual and procedural history.

JWJ Industries, Inc. is a domestic corporation organized and existing under the laws of the state of New York.  Holbrook is a shareholder and officer of JWJ Industries, Inc. Holbrook holds a permit from the New York State Department of Environmental Conservation ("DEC"), which allows him to operate a transfer station at 436 County Route 51, in the Town of New Haven, Oswego County, known as the JWJ Transfer Station ("Transfer Station"). Plaintiffs aver that since issuance of the DEC permit, they have spent a significant sum of money to construct the Transfer Station (the only privately owned construction & demolition Debris ("C&D Debris") transfer station in Oswego County), and to improve the County Route 51 property for compliance with DEC requirements.  Plaintiffs assert that almost all of the income derived from JWJ Industries, Inc. is in some way associated with the DEC permit for the Transfer Station.  The Transfer Station accepts waste that is generated both in and out of Oswego County.

In October 2008, the Oswego County Legislature enacted the Oswego County Recycling & Solid Waste Local Law, which contained a Flow Control Law.  Plaintiffs challenged that law, claiming that its enforcement would deprive them of all economically beneficial use of the transfer station permit previously issued by the DEC.  In June 2009, the Court issued a temporary restraining order ("TRO") maintaining the status quo and enjoining

_____

[2] This case was initially assigned to the Hon. Neil McCurn, U.S.D.J.

the County from enforcing the Flow Control Law against Plaintiffs.  By Decision and Order dated July 17, 2009, the Court lifted the TRO and denied Plaintiffs' motion for a preliminary injunction based upon the County's assertion that the Flow Control Law does not apply to waste generated outside the County.  By Decision and Order dated June 13, 2011, the Court found that, although the County had the right to enact the Flow Control Law, it is unconstitutionally vague.  The County was enjoined from enforcing the current Flow Control Law against Plaintiffs until it corrected any shortcomings in the Law.

On December 15, 2011, the County enacted a revised flow control law (the "2011 Law"), which became effective on January 1, 2012.  The 2011 Law requires that all solid waste generated inside Oswego County must go the County facility.  Plaintiffs moved to enjoin enforcement of the 2011 Law on the ground that it was, once again, unconstitutionally vague.  This motion was granted by Order dated April 13, 2012.  Presently before the Court is Plaintiffs' motion for summary judgment on its Fourth Cause of Action and Defendant's cross-motion for summary judgment.

## II.      STANDARD OF REVIEW

Both parties move for summary judgment pursuant to Fed. R. Civ. P. 56.  It is well settled that, on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A party seeking summary judgment bears the burden of

informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525–26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.    DISCUSSION

### a.    Due Process

#### 1.    Whether the 2011 Law is Unconstitutionally Vague as to Notice

Plaintiffs contend that the 2011 Law is vague because "[i]t fails to provide people of ordinary intelligence with a reasonable opportunity to understand" the following questions: (1) whether C&D material is "Recyclable Material" under the 2011 Law; (2) whether a transfer station is a facility which provides for the recovery of recycled materials; (3) whether recycled materials may be delivered to a transfer station; (4) whether C&D Debris is "solid waste"; and (5) the meaning of section 4(10) of the 2011 Law.

A basic principle of the Due Process Clause is that "an enactment is void for vagueness if its prohibitions are not clearly defined."  Grayned v. City of Rockford, 408 U.S.

- 4 -

104, 107 (1972).  The Second Circuit has recently explained the "void-for-vagueness"

doctrine:

> "As one of the most fundamental protections of the Due Process Clause, the void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them."  Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007) (internal citations and quotation marks omitted).  "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 186 (2d Cir. 2010) (internal quotation marks omitted).  The degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all.

Commack Self-Service Kosher Meats, Inc. v. Hooker, 680 F.3d 194, 213 (2d Cir. 2012).  In

interpreting a statute, the Court is "relegated to the words of the law, the interpretations the

relevant courts have given to analogous statutes, 'and, perhaps to some degree, to the

interpretation of the statute given by those charged with enforcing it.'  Indeed, the court does

not look at the statutory language in isolation; rather, the court considers the language in

context, with the benefit of the canons of statutory construction and legislative history."  Id.

(quoting Grayned, 408 U.S. at 110 (1972) and citing United States v. Farhane, 634 F.3d 127,

142 (2d Cir. 2011)).

### i.   Whether C&D Debris is Recyclable Material

Plaintiffs first argue that the 2011 Law fails to adequately explain whether C&D

Debris is recyclable material and, thus, whether such material can be taken to a privately

owned in-county transfer station.  The Court disagrees and finds that under the clear

language of Local Law 2011, C&D Debris may not be taken to Plaintiffs' Transfer Station.

Local Law 2011 defines the phrase "Construction & Demolition Debris" by reference to 6 N.Y.C.R.R. § 360-1.2(b)(38).[3]  Local Law 2011 § 2(5).  As is relevant hereto, the applicable definition at § 360-1.2(b)(38) provides that C&D Debris consists of "uncontaminated **solid waste** resulting from the construction, remodeling, repair and demolition of utilities, structures and roads."  (emphasis added).  Local Law 2011 defines the phrase "Solid Waste" by reference to 6 N.Y.C.R.R. § 360-1.2(a) and specifically excludes "any materials designated as Recyclable Materials by the Director . . . or by New York State law or regulation."  Local Law 2011 § 2(33).  Also excluded from the definition are "materials including **source separated recyclables** that have been traditionally incorporated as secondary material in the manufacturing process."  6 N.Y.C.R.R. § 360-1.2(a)(4)(viii) (emphasis added).  Local Law 2011 further defines the phrase "Recyclable Materials" as "[a]ll materials **which can be recovered for a material value** as determined by the Director on an

---

[3] That provision provides as follows:

Construction and demolition (C&D) debris means uncontaminated solid waste resulting from the construction, remodeling, repair and demolition of utilities, structures and roads; and uncontaminated solid waste resulting from land clearing. Such waste includes, but is not limited to bricks, concrete and other masonry materials, soil, rock, wood (including painted, treated and coated wood and wood products), land clearing debris, wall coverings, plaster, drywall, plumbing fixtures, nonasbestos insulation, roofing shingles and other roof coverings, asphaltic pavement, glass, plastics that are not sealed in a manner that conceals other wastes, empty buckets 10 gallons or less in size and having no more than one inch of residue remaining on the bottom, electrical wiring and components containing no hazardous liquids, and pipe and metals that are incidental to any of the above. Solid waste that is not C&D debris (even if resulting from the construction, remodeling, repair and demolition of utilities, structures and roads and land clearing), includes but is not limited to asbestos waste, garbage, corrugated container board, electrical fixtures containing hazardous liquids such as fluorescent light ballasts or transformers, fluorescent lights, carpeting, furniture, appliances, tires, drums, containers greater than 10 gallons in size, any containers having more than one inch of residue remaining on the bottom and fuel tanks. Specifically excluded from the definition of construction and demolition debris is solid waste (including what otherwise would be construction and demolition debris) resulting from any processing technique, other than that employed at a department-approved C&D debris processing facility, that renders individual waste components unrecognizable, such as pulverizing or shredding.  Also, waste contained in an illegal disposal site may be considered C&D debris if the department determines that such waste is similar in nature and content to C&D debris.

annual basis, case by case basis or by other NYS or Federal law, rule or regulation." Local

Law 2011 § 2(25) (emphasis added). Because C&D Debris is defined to include solid waste,

which, in turn, is defined to exclude: (i) source separated recyclables; and (ii) materials

determined by the Director or by state or federal law to be recovered for material value, it

follows that C&D Debris does not fit within the definition of Recyclable Material. Stated

otherwise, because C&D Debris contains material in addition to that which is recyclable, C&D

Debris does not qualify as Recyclable Material in and of itself. This reasoning indicates that

Recyclable Materials that are co-mingled with Solid Waste, as is C&D Debris, are thus, Solid

Waste as a whole. The Court, therefore, finds that the Law is not vague in this regard.

### ii.   Whether a Transfer Station is a Facility Which Provides for the Recovery of Recycled Materials

Plaintiffs also contend that the 2011 Law is unconstitutionally vague because it

does not give people of ordinary intelligence a reasonable opportunity to understand whether

a transfer station is a facility which provides for the recovery of Recyclable Material. The

2011 Law definition of a "Transfer Station" draws from 6 N.Y.C.R.R. section 360-1.2(b)(172),

which defines it as " . . . a solid waste management facility other than a recyclables handling

and recovery facility . . . ." The definition itself provides a satisfactory answer to Plaintiffs'

contention.[5]

The Court finds that section 4(6)(c) of the 2011 Law is not unconstitutionally vague.

Section 4(6)(c) states, in relevant part, that "[a]ll Industrial Recyclables, Commercial

Recyclables, -Institutional Recyclables and Recyclable Materials generated as a result of

---

[5]Plaintiff's DEC permit expressly provides that source-separated recyclables cannot be accepted at their Transfer Station.

C&D activity . . . may be taken to such other facility within or without the County of Oswego which provides for the **re-use**, recovery, **or** Recycling of the Recyclable Material(s)."  Local Law 2011 § 4(6)(c) (emphasis added).  Although the 2011 Law does not define the term "recovery," New York State regulations (which reasonably appear to be a significant source of the terminology used in the 2011 Law) define the term "recover" to mean "any act or process by which recyclables or reusables are separated from the solid waste stream."  6 N.Y.C.R.R. § 360-1.2(b)(128).  Recycling is defined by the 2011 Law as the "separation, collection, processing and marketing of Recyclable Material."  Local Law 2011 § 2(26).  Re-use is not defined or specified by the 2011 Law, however, Plaintiffs do not take issue with this.  Thus, under the plain meaning of the 2011 Law, recyclables may be brought to any facility that has the capacity to re-use, recover, or recycle.  That a facility may have one or more of these capacities does not, however, mean that they are permitted to perform those actions, including recovery.

This provision clearly deals with Recyclable Material that has already been recovered.  As the 2011 Law states in section 4(10), Recyclable Material that is generated from C&D Debris is only considered Recyclable Material **after** it has been source-separated from Solid Waste and placed in a separate container.  Local Law 2011 § 4(10). While the Recyclable Material has already been recovered, Plaintiffs may still reuse the material as the provision indicates.  While Plaintiffs may not separate, recover, or recycle in-county C&D Debris, the 2011 Law does not prohibit Plaintiffs from re-using the already recovered Recyclable Material.  This provision is not inconsistent with underlying principles of the 2011 Law, and parallels the other provisions within the 2011 Law.  Therefore, as per the vagueness standard, a person of ordinary intelligence could reasonably understand that,

while an in-county Transfer Station may have the capabilities to recover Recyclable Material from C&D Debris generated in-county, the 2011 Law precludes such activity and only allows for the re-use of source-separated Recyclable Material.  Based on this reasoning, the Court finds that the provision is not unconstitutionally vague.

### iii.    Whether Recyclable Materials May Be Delivered to a Transfer Station

Plaintiffs also argue that the law is unconstitutionally vague as to whether Recyclable Materials may be delivered to a transfer station.  The Court disagrees.  Based upon the discussion above and a reading of Local Law section (4)(6)(c), it is clear that in-county source-separated Recyclable Materials may go to a transfer station for their reuse.  Local Law 2011 § 4(6)(c).  A material is only a Recyclable Material after it has been recovered by source-separation.  Local Law 2011 § 4(10).  Plaintiffs' DEC permit expressly provides that "[s]ource-separated recyclables may not be accepted at this facility."  Therefore, the Court finds that this section is not unconstitutionally vague, nor does it contradict any other section of the 2011 Law.

### iv.    The Meaning of Section 4(10) of the 2011 Law

Plaintiffs also contend that the following sentence of section 4(10) of the 2011 Law is unconstitutionally vague: "Recyclable Materials that are co-mingled with other Solid Wastes shall be subject to the provisions of this section."  Local Law 2011 § 4(10).  Plaintiffs claim the section is unconstitutionally vague because it fails to explain whether the co-mingled waste is solid waste, recyclable material, or otherwise.  Plaintiffs failed to acknowledge that section 4 contains more than the sentence to which they cite.  Id.  Taken in

conjunction with the other parts of section 4 and with the definitions provided in the 2011 Law, the Court finds that this provision is not unconstitutionally vague.

Section 4(10) exemplifies Defendant's argument that Recyclable Material is a subcategory of C&D Debris.  Id.  The provision provides that, "[n]othing in this section shall be construed to prevent the source separation and marketing of recyclable materials from C&D Debris or other Solid Waste at the point of collection . . . ."  Id.  The section explains further that the 2011 Law is not discouraging source separation as long as the Recyclable Material is in a separate container from other Solid Wastes before it is transported to market.  Id.  If Recyclable Materials are not source separated, and are still co-mingled with other Solid Wastes then they are subject to the provisions of the rest of the section.  In other words, if the Recyclable Material is still part of the Solid Waste Material, then it is Solid Waste and the load as a whole must go to a County facility.  If the Recyclable Materials are source separated and are distinct from the other Solid Waste of the load, then the 2011 Law does not prohibit Plaintiffs from taking that material.  It does not matter that Defendant does not explicitly explain what the co-mingled material is because a person of ordinary intelligence could logically follow the provision so as to arrive at the answer of what the co-mingled material is: non-source separated Solid Waste, including C&D Debris that has not been separated into its component parts.

**2.   Whether the 2011 Law is Vague as to Arbitrary and Discriminatory Enforcement**

The second independent ground to find that a law is unconstitutionally vague is "if it authorizes or even encourages arbitrary and discriminatory enforcement." VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 186 (2d Cir. 2010) (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000). The Supreme Court recognizes this ground "as 'the more important aspect of the vagueness doctrine,'" and "mandates that laws contain 'minimal guidelines to govern law enforcement.'" Thibodeau, 486 F.3d at 66 (quoting Kolender v. Lawson, 461 U.S. 352, 358 (1983)). Statutes must "provide explicit standards for those who apply" them to avoid "resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Thibodeau, 486 F.3d at 66 (quoting Grayned, 408 U.S. at 108-09). A court may determine that a statute provides adequate guidance if either: (1) the "statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement;" or (2) "even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." VIP of Berlin, LLC v. Town of Berlin, 593 F.3d 179, 191 (2d Cir. 2010) (quoting Farrell v. Burke, 449 F.3d 470, 494 (2d Cir. 2006)). The Second Circuit has held that the statute is not required to specify every prohibited act. Perez v. Hoblock, 368 F.3d 166, 175 (2d Cir. 2004).

Plaintiffs claim that the 2011 Law does not provide sufficiently clear standards to eliminate the risk of arbitrary and discriminatory enforcement as to the following: (1) whether C&D Debris is recyclable; (2) whether a transfer station is a facility which provides for the recovery of Recycled Materials; (3) whether Recyclable Materials may be deposited at a transfer station; (4) whether C&D Debris is Solid Waste; and (5) section 4(10) overall.

Local Law 2011 defines "Recyclable Materials" as "[a]ll materials which can be recovered for a material value as determined by the Director on an annual basis, case by case basis or by other New York State or Federal law, rule or regulation." Local Law 2011 § 2(25). Consequently, there are three ways in which a material may be deemed a Recyclable Material: (1) a determination by the Director on an annual basis; (2) a determination based upon on a case-by-case approach; and (3) a determination by New York State or federal law, rule or regulation.

The determinations made by the director on an annual basis or by New York State or federal law, rule, or regulation pose no risk of arbitrary and discriminatory enforcement. These two methods will produce ways in which persons affected by the 2011 Law will be able to tell what a Recyclable Material is ahead of time.  Whether it be a list created by the Director or a statute, regulation, or law created by New York State, both methods provide notice and predictability in enforcement.

The second method is constitutionally troubling. See Cunney v. Bd. of Trustees of Vill. Of Grand View, N.Y., 660 F.3d 612, 623 (2d Cir. 2011) (holding that a statute was unconstitutionally vague for risk of arbitrary enforcement because the enforcing agency could choose any point from which to measure a building's height to determine compliance with a local restriction). This case-by-case discretion is the "wholly subjective judgment without statutory definitions, narrowing context, or settled legal meanings," the Supreme Court of the United States envisioned as unconstitutional under this prong of the Vagueness Doctrine. United States v. Williams, 553 U.S. 285, 306 (2008). Under the 2011 Law,  the Director could essentially choose to deem similar materials recyclable in one case, but not in another. This would make the classification of "Recyclable Materials" arbitrary and discriminatory as there

is no standard in the 2011 law or in New York statutes and regulations which guide the Director as to what materials would be recoverable for material value.

As for Plaintiffs' other four issues with the 2011 Law, none pose any risk of arbitrary and discriminatory enforcement because they provide clear and predictable guidelines for enforcement. These provisions of the 2011 Law utilize New York statutes and regulations for definitions and do not allow the Director, the Board or any other enforcing agency to use unfettered, subjective discretion. Thus, they are not unconstitutionally vague as to the of risk of arbitrary and discriminatory enforcement.

### b.   Takings Claim

#### i.   Whether the Taking Claim is Ripe

Defendant first moves for summary judgment on the Taking Claim on the ground that it is not ripe because Plaintiffs have not exhausted available state remedies.  Plaintiffs respond that this issue already was decided against Defendant and, therefore, constitutes the law of the case.  Although Judge McCurn previously concluded that the matter was ripe for adjudication, he did not address the availability of a remedy under the New York State Constitution.  Accordingly, the Court finds that the law of the case is inapplicable to the extent Defendants argue that the New York State Constitution provides a procedure for seeking just compensation.

In Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court held that a Fifth Amendment takings claim is not ripe until the plaintiff had satisfied two requirements.  First, the plaintiff must obtain a final decision regarding the property in question from the government entity charged with implementing the relevant regulations.  Wiliamson County, 473 U.S. at 186 (the "finality requirement").

Second, the plaintiff must pursue the state's "reasonable, certain, and adequate" procedures for obtaining just compensation.  Id. at 194.

Here, the property claimed to have been taken is the economically beneficial use of Plaintiffs' Part 360 transfer station permit to operate a transfer station.  Assuming, *arguendo*, that this is compensable property, there is an available avenue of relief through the New York State Constitution.  The New York State Constitution prohibits the taking of property without just compensation.  Contrary to Plaintiffs' assertion, Art. I, sec. 7 of the New York State Constitution is not limited to real property, but extends to "[p]rivate property."  For example, it has been held that franchises are property entitled to constitutional protection.  In re Fifth Ave. Coach Lines, Inc., 22 N.Y.2d 613, 625-26 (1968).  Moreover, there is a procedure under New York State law for enforcing rights under the state's constitution.  See Livant v. Clifton, 334 F. Supp.2d 321, 326 (E.D.N.Y. 2004).  A state compensation procedure will be deemed available and adequate even when that procedure remains unsure and undeveloped.  Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 99 (2d Cir. 1992).  Because there is no indication Plaintiffs availed themselves of those procedures, the takings claim is not ripe and, therefore, must be DISMISSED.

### ii.   Whether There Has Been An Unconstitutional Taking

Assuming that the matter before the Court is ripe, the Court finds that there has been no unconstitutional taking.  Relying on Lucas v. South Carolina Coastal Council, 112 S. Ct. 2886 (1992), Plaintiffs claim that the 2011 Law deprives them of all economically beneficial use of the DEC Permit.  Specifically, Plaintiffs argue that, if the 2011 Law is enforced, they will be required to dispose of solid waste collected from within Oswego County

- 14 -

at the County Facility at rates higher than they could otherwise dispose of the waste. Plaintiffs further claim that the County rates are more than their customers are willing to pay.[6]

The holding in Lucas "is quite narrow and has been confined to facts that substantiate a permanent deprivation of all economic use on all the parcels purchased by the property owner." Sartori v. United States, 67 Fed. Cl. 263, 275 (2005). "Lucas was carved out for the 'extraordinary case' in which a regulation permanently deprives property of all value[.]" Id. (quoting Tahoe-Sierra Preservation Counsel, Inc. v. Tahoe Regional Planning Agency, 122 S. Ct. 1465 (2002)). A regulation that causes a diminution in profits does not constitute a deprivation of economically viable use of the property. Federal Home Loan Mortg. Corp. v. New York State Div. of Housing and Community Renewal, 83 F.3d 45, 48 (2d Cir. 1996) (holding that although rent stabilization laws will impinge on profits, the property owners "may still rent apartments and collect the regulated rents."). Similarly, "a regulation that forbids a landowner from putting his property to its most economically beneficial use does not, in and of itself, give rise to a taking." Southview Assocs., Ltd., 980 F.2d at 106.

Here, there is no permanent deprivation of all value of Plaintiffs' DEC permit. Plaintiffs may continue to use their Transfer Station permit for an economically beneficial use. See Southview Assocs., 980 F.2d at 107. The 2011 Law does not preclude Plaintiffs from handling out-of-County waste or receiving source-separated recyclables. For the reasons previously discussed in connection with the taking claim, the 2011 Law does not deprive Plaintiffs of the DEC permit or the ability to engage in their chosen occupation.

_____

[6] Plaintiffs claim that "[t]he increase in tipping fees that must be paid by plaintiffs to comply with the 2011 Law will deprive plaintiff of all economically beneficial use of the JWJ Transfer Station permit because the tipping fees resulting from enforcement of the 2011 Law will exceed the cost JWJ's customers are willing to pay for their waste to be processed and disposed of." Plaintiffs have submitted no evidence in support of this contention.

Plaintiffs are permitted to continue operating the transfer station and can accept out-of-county waste and source-separated recyclables, and collect in-county waste to be disposed of at the County facility.  Accordingly, Plaintiffs have failed to identify any legally cognizable infringement on a protected property interest.  The Due Process claim as to the takings claim is, therefore, DISMISSED.

### c.    Equal Protection

Plaintiffs also claim that enforcement of the 2011 Law results in the unequal enforcement of the laws and, therefore, violates their rights to the Equal Protection of the law as guaranteed by the Fourteenth Amendment.  In support of this argument, Plaintiffs contend that Defendant has permitted a competitor, Syracuse Haulers, to deliver waste from a construction site within Oswego County to a waste facility outside of Oswego County.  Defendant responds that the 2011 Law applies equally to everyone, that Syracuse Haulers is permitted only to remove source separated recyclable materials out of Oswego County and that Plaintiff, too, would be permitted to remove source separate recyclable materials to an out-of-county facility.  According to Defendant, source separated recyclable materials are not included within the definition of C&D Debris and, therefore, are not within the scope of the 2011 Law.  Because source separated materials do not constitute C&D Debris, they are not required by section 4(3) of the 2011 Law to be disposed of at a County Solid Waste Facility.

Based on the foregoing analysis, the Court finds that the Equal Protection claim must be DISMISSED.  Plaintiffs have failed to demonstrate that they are treated differently than another similarly situated person or entity.  Rather, the evidence demonstrates that both Plaintiff and Syracuse Haulers are: (1) permitted to bring source separated recyclables to a facility other than the County Facility; and (2) prohibited from bringing solid waste (including

Recyclable Materials co-mingled with other materials) from any place other than the County Facility.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED in part and GRANTED in part.  Plaintiff's motion for summary judgment is GRANTED on the Fourth Cause of Action insofar as Local Law 2011 section 2(25) is unconstitutionally vague as to the case-by-case determinations made the Director as to the definition of Recyclable Materials; Plaintiff's motion is all other respects is DENIED.  Defendant's cross-motion for summary judgment is GRANTED in part and DENIED in part.  Defendant's cross-motion for summary judgment is DENIED as it pertains to the Local Law 2011 section 2(25) case-by-case approach of the definition of Recyclable Materials based upon the Director's determination; Defendant's cross-motion for summary judgment in all other respects is GRANTED.


IT IS SO ORDERED.

November 16, 2012


Thomas J. McAvoy
Senior, U.S. District Judge